UNITED STATES BANKRUPTCY COURT

DISTRICT OF MASSACHUSETTS

| | | | |
|---|---|---|---|
| In re | : | | |
| GAERY COSTA, | : | | |
| Debtor | : | Chapter 7 | |
| | : | No. 07-42584-JBR | |
| _____ | : | | |

**MEMORANDUM OF DECISION**

This matter came before the Court on the Debtor's Objection to Proof of Claim No. 5 of Structured Asset Services, LLC (Docket #132) and Objection to Proof of Claim No. 6 of Encore Funding, LLC (Docket #133). Structured and Encore have filed unsecured claims in the amounts of $325,031.99 and $88,885.37, respectively. As a preliminary matter, the Debtor in this case has standing to object as he has a pecuniary interest in the surplus that would result if the objections are sustained. *See In re Choquette*, 290 B.R. 183, 188-89 (Bankr. D. Mass. 2003). At a hearing held on March 13, 2008, attorneys for Structured and Encore indicated that they did not believe an evidentiary hearing would be necessary; the Debtor's counsel did not request an evidentiary hearing. Instead, the parties opted to file supplemental affidavits (Docket ## 160, 161 and 163) and have the Court determine the objections based on the record.

**FACTS:**

The Debtor, Gaery Costa ("Debtor"), won a $1,000,000 Massachusetts lottery prize on September 2, 1997. The prize was payable in twenty installments of $50,000. On or about March 26, 1998, the Debtor borrowed $165,179.00 from Peoples Lottery Foundation, Inc. ("PFL") and executed a Promissory Note to PLF in that amount.

(Savysky Aff., Ex. A).  As security for the Note, the Debtor granted PLF a security interest in his right to the particular lottery proceeds he was due to receive annually from September 2, 1998 through September 2, 2007.  (Savysky Aff. ¶ 4).  The parties also entered into an escrow agreement that allowed for the lottery payments to go from the Lottery Commission to PLF via an escrow agent.  (Savysky Aff. ¶ 4).  The Debtor also signed an affidavit regarding the loan documents at the time the loan was made.  (Savysky Aff., Ex. B).  On April 6, 1998, PLF assigned the loan documents to the Settlement Trust for value.  (Savysky Aff. ¶ 5).  Structured Assets Services, LLC ("SAS") is the servicing agent for Settlement Trust.  *Id.*  The Lottery Commission, through the escrow agent, made the required loan payments from 1998 to 2001.  (Savysky Aff. ¶ 8).  At the Debtor's direction, the Lottery Commission ceased making loan payments in September 2002, instead forwarding the installment to the Debtor.  (Savysky Aff. ¶ 8). The Debtor never remitted the 2002 payment to SAS.  (Savysky Aff. ¶ 8).

During 2001, the Debtor entered into three Cash Advance and Security Agreements with Encore Funding, LLC ("Encore"), although, as discussed below, the parties disagree on the nature of the agreements.  Encore commenced litigation against the Debtor in state court in February 2007.

On August 29, 2003, SAS obtained a preliminary injunction, which enjoined the Debtor and the Lottery Commission from paying the money to anyone other than SAS until the obligations due to SAS had been satisfied.  (Savysky Aff. ¶ 10).  Following a clarification of the law regarding assignment of lottery proceeds, the injunction was dissolved as to the Lottery Commission.  (Savysky Aff. ¶ 12).  The Commission,

2

therefore, disbursed payments for the years 2003-2004 to the Debtor. *Id.* After the Debtor failed to pay SAS any further payments, SAS obtained a preliminary order requiring the Debtor to turnover the September 2006 lottery payment to his attorney to be held in escrow pending a further order by the superior court. (Savysky Aff. ¶ 13). The Debtor failed to turn the sum over to his attorney and the superior court litigation is still ongoing. *Id.*

**POSITIONS OF THE PARTIES:**

In his Objection to Claim #132, the Debtor asserts that the claim of SAS is barred by state statute, as lottery proceeds were not assignable as collateral at the time the parties entered into the agreement. (Objection to Claim #132 ¶ 2-4.) Although the Objection does not articulate the various legal theories being asserted, the Debtor appears to claim that SAS used unfair and deceptive trade practices, fraudulently induced him into signing the documents and failed to provide loan disclosure statements. (Objection to Claim #132 ¶ 5) Moreover, the Debtor asserts that he was suffering from several "illnesses" and "afflictions" and was not of sound mind when entering into the loan documents. *Id.* Finally, the Debtor argues that even if SAS has a valid unsecured claim, the amount claimed is "grossly inflated and fails to credit the debtor for payments made." (Objection to Claim #132 ¶ 7).

SAS concedes that its security interest in the Debtor's lottery payments is not enforceable and, accordingly, has filed an unsecured claim. SAS insists that despite the unenforceability of it security interest, the underlying debt remains enforceable. SAS maintains that the loans were commercial in nature and not subject to disclosure requirements. Moreover, it asserts that even if the transaction were a consumer

3

transaction, state and federal law exempt loans in excess of $25,000 that are not secured by an interest in the consumer's principal dwelling.

With respect to the Encore transactions, the Debtor asserts that he received the $50,000 in cash advances for "simply endorsing Encore Funding and for doing public relations for Encore Funding unless Massachusetts legalized the sale of lottery proceeds by the end of 2003." (Objection to Claim #133 ¶ 1). The Debtor claims that if the sale of lottery proceeds had been legalized by the end of 2003 he would have be required to repay the money under the agreement, but because such a sale was not legalized by that date, the agreement does not require him to repay the money. (Objection to Claim #133 ¶ 1). The Debtor repeats his assertions of illegality based on the nonassignability of lottery proceeds as collateral at the time the agreements were entered into. The Debtor also repeats his claims of fraudulent inducement, unfair and deceptive trade practices and lack of capacity. The Debtor asserts that an Attorney Edward Hodkinson fraudulently induced him to sign the documents by representing to him that he would not have to pay the money back unless "Massachusetts legalized the sale of lottery winnings by the end of 2003." (Objection to Claim #133 ¶ 5(a)). Additionally, the Debtor points to the fact that Encore issued a Form 1099 listing the $50,000 as "miscellaneous income" as evidence that Encore did not consider the transaction a loan. Finally, the Debtor argues that the amount claimed is "grossly inflated and fails to credit the debtor for payments made." (Objection to Claim #133 ¶ 8).

Encore responds that it "loaned the Debtor $50,000, interest free, until the Commonwealth of Massachusetts allowed the assignment of the proceeds of a winning lottery ticket," at which time the Debtor could sell the proceeds to Encore or return the

4

money interest free. Encore asserts that Massachusetts legalized such a sale on July 1, 2004 and that since that time the Debtor has refused to sell or return the proceeds to Encore. Encore's Senior Counsel filed an affidavit indicating that there are no records of the type of services agreement described by the Debtor and that Encore has not and does not pay lottery winners to provide services. (Harris Aff. ¶ 2-3). Moreover, "Encore only disbursed money in the form of cash advances as part of agreements to purchase lottery prize payments." (Harris Aff. ¶ 3).

**DISCUSSION:**

A properly filed proof of claim constitutes *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). Although the burden of proof always remains with the claimant, if a claim is properly filed, the "party objecting to the claim has the burden of going forward with equivalent probative evidence to rebut the presumption of validity and amount." *In re Patchell*, 344 B.R. 8, 12 (Bankr. D. Mass. 2006) (quoting *In re Fleming*, 258 B.R. 488, 489 (Bankr. M. D. Fla. 2000). "It is often said that the objector must produce evidence equal in force to the prima facie case." *In re Allegheny International, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992) (citations omitted). If the objector effectively rebuts the presumption of validity, the claimant must prove the validity of the claim by a preponderance of the evidence. *In re WHET, Inc.*, 33 B.R. 424, 437 (Bankr. D. Mass. 1983).

To begin, the Court notes that most of the defenses raised in the Debtor's objection are nothing more than bare allegations unsupported by the type of **probative evidence** contemplated by the rules and case law discussed above. Especially with respect to the Objection to Claim of SAS, which has been in various forms of state court

5

litigation since 2003, the Debtor should have by now had the opportunity to discover specific facts to support his contentions.

The Debtor's assertion that the former prohibition on the assignment of lottery prizes embodied in Massachusetts General Laws ch. 10, § 28 made the contract illegal and therefore, void *ab initio*, is easily dispensed with. As both claimants point out, the fact that their security interests are not enforceable "does not impair the validity of a promissory note." *Midland States Life Ins. Co. v. Cardillo*, 59 Mass. App. Ct. 531, 540 (2003). Therefore, the Debtor's claim of illegality is unavailing.

With respect to the Debtor's claims of fraudulent inducement against SAS, it is doubtful that the objections set them forth with enough particularity to satisfy the special pleading requirements of Fed. R. Civ. P. 9(b) made applicable by Fed. R. Bankr. P. 7009. The Debtor focuses on his claims that a vice-president of PLF told him the loan was for personal, household or family purposes, that the loan was legal under Massachusetts law and that the loan was in his best interest as support for his fraud claim. The Debtor further alleges that he was prevented from having independent legal counsel review the document. The Debtor, however, does not provide any **evidence** to support the bare allegations contained in his objections. Moreover, the Debtor executed an affidavit at the time of the borrowing in 1998 that contradicts each of his assertions. (Savysky Aff., Ex. B).

With respect to the Debtor's claims of fraudulent inducement against Encore, the Debtor has not satisfied Fed. R. Civ. P. 9(b). The Debtor does not provide sufficient facts surrounding the alleged referral of Debtor by Encore to Attorney Hodkinson that led to the supposed fraudulent inducement. Moreover, with the exception of the statement

6

"Encore Funding referred the Debtor to Attorney Hodkinson…" all of the allegations relate to conduct of Attorney Hodkinson individually and not Encore.

The Debtor also claims that PLF failed to provide him with loan disclosures as required by Federal and Massachusetts law. As counsel for SAS properly notes, PLF was not required to provide such disclosures. Credit cost disclosures are not required in a commercial loan context. 15 U.S.C. § 1603(1); Mass. Gen. Laws ch. 140D, § 2(a). Even if the loan were a consumer loan as the Debtor alleges, it would not be subject to the disclosure requirements as it exceeded $25,000 and was not secured by an interest in the Debtor's principal dwelling. 15 U.S.C. § 1603(3); Mass. Gen. Laws ch. 140D § 2(c).

As far as the Debtor's claims that at the time of the agreements with SAS and Encore he "was suffering from several 'illnesses' and afflictions' and was, therefore, not of sound mind, he has provided no evidence on this point.

The final point that Debtor makes with respect to each claim is that if they are valid, they are grossly inflated and do not account for payments made by the Debtor. As far as SAS is concerned, the Debtor argues that the amount of the claim should be the difference between the amount of the $165,719.00 loaned and the $134,000.00 of payments made, with interest at the statutory rate in Massachusetts. SAS attached to its proof of claim a loan analysis showing that all payments made by Debtor were credited and illustrating that interest was calculated in accordance with the terms of the Note signed by Debtor. The Note provides for "interest at the lower of 16.77% compounded monthly or the maximum rate permitted by law on the principal balance or so much thereof from time to time as remains outstanding." (Savysky Aff., Ex. A). The maximum rate permitted by Massachusetts law is 20% per annum upon the sum loaned.

7

Mass. Gen. Laws ch. 271, § 49(a). The loan analysis provided by SAS comports with this rate. SAS's claim also includes pre-petition attorney's fees of $40,854.07, which are provided for in the PLF loan documents.

Encore's Cash Advance and Security Agreement provides that "to the extent that Lottery Winner's obligation to repay the Advance to Purchaser remains unpaid when due, the outstanding principal unpaid principal balance of the Advance shall from that day forward accrue interest at 18% per annum compounded daily, or the maximum legal rate then permitted in the Commonwealth of Massachusetts, whichever is lesser." (Proof of Claim #6, Exhibit A, p. 3). Encore's claim includes interest at the rate of 20% on the $50,000 unpaid principal balance of the loan, which interest totaled $30,274.00 as of the petition date. Encore's claim also includes pre-petition legal fees and expenses of $8,611.37 to which it is entitled pursuant to the Cash Advance and Security Agreements entered into between Encore and the Debtor.

The Debtor asserts that because Encore issued him a Form 1099 listing the $50,000 as miscellaneous income, it follows that Encore did not consider it a loan. The agreement between Encore and the Debtor contemplated the sale of the Debtor's lottery proceeds to Encore upon the satisfaction of certain conditions precedent. The money given by Encore to the Debtor was a cash advance against the sum that was to be paid to Encore in exchange for those proceeds and, therefore, Encore issued a Form 1099 in accordance with its accounting procedures. (Harris Aff. ¶ 9). The agreement, however, also provided for repayment of the $50,000 if certain conditions were not met. The issuance of the Form 1099 is irrelevant to whether or not Encore has a valid claim against the Debtor.

8

**CONCLUSION**

For the reasons set forth above, the Debtor's Objection to Claim No. 5 of Structured Asset Services, LLC (Docket #132) and the Debtor's Objection to Claim No. 6 of Encore Funding, LLC (Docket #133) are OVERRULED.

A separate Order will issue.

Dated: April 22, 2008                         By the Court,

*/s/ Joel B. Rosenthal*

_____
Joel B. Rosenthal
United States Bankruptcy Judge

9